## Commonwealth v. Matola

*Edward V. Sciamanna,* for Commonwealth.

*Lloyd O. Hart,* for relator.

CARSON, J., August 17, 1950.—Relator, Michael G. Matola, was arrested upon a warrant of extradition issued by the Governor of the Commonwealth of Pennsylvania upon the requisition of the Governor of the State of Ohio, and having been brought before this court agreeable to the provisions of the Act of July 8, 1941, P. L. 288, presented his petition praying that a writ of habeas corpus be issued alleging that he was not a fugitive from justice and that he was being unlawfully deprived of his liberty. Relator was released upon recognizance fixed by this court and the case came on

for hearing on August 17, 1950. Testimony was taken, arguments made, and the hearing continued until August 21, 1950, at 1 p.m.

The regularity of the issuance of the requisition of the Governor of Ohio and of the proceedings of this Commonwealth and in this county as well as the identity of relator were admitted. On behalf of relator, only one question was raised, to wit: Is the prisoner a fugitive from justice? Relator testified that he purchased certain merchandise from the Memorial Art Works in Jefferson County, Ohio, on April 19, 1949, for the price of $310, that he loaded the merchandise upon his truck and promised to the seller his check in payment thereof. He further testified that on April 19, 1949, he accordingly mailed his check and that this check would have been received in due course on April 20, 1949, being the date which he inserted in the check. The stamped endorsement of the Union Savings Bank and Trust Company in Steubenville, Ohio, shows that the check was desposited at the bank on that day by the payee. It is further admitted that the check was not paid when presented to the First National Bank of Brownsville, Pa., the bank upon which it was drawn, which bank returned the check unpaid with the notation "short according to our books". The check was subsequently twice presented and each time dishonored. Relator contends that he did not deliver the check on April 20, 1949, and could not have done so because he attended a wedding in Burgettstown, Pa., at about noon on April 20, 1949, and thereafter remained with the wedding party until late the same evening. He called his wife and the parties who were married on April 20, 1949, to corroborate him.

The Commonwealth called as a witness Joseph A. Mosti, who trades as Memorial Art Works, and he testified that relator personally delivered the check in question to him on April 20, 1949.

Relator is indicted in the State of Ohio with the crime of "issuing check without sufficient funds" on April 20, 1949, in Jefferson County, Ohio, being a violation of the General Code of Ohio (G. C. §710-176):

"DRAWING CHECK, DRAFT, ETC., WITHOUT CREDIT: PENALTY.—Any person, who, with intent to defraud, shall make or draw or utter or deliver any check, draft or order for the payment of money upon any bank or other depository, who, at the time thereof, has insufficient funds or credit with such bank or depository, shall be guilty of a felony, and upon conviction thereof shall be fined not less than fifty dollars and not more than two hundred dollars, or imprisoned in the Ohio state penitentiary for not less than one year nor more than three years or both.

"PRIMA FACIE EVIDENCE OF INTENT TO DEFRAUD. As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud, and knowledge of insufficient funds in, or credit with, such bank or other depository. The word 'credit' as used herein shall be construed to mean any contract or agreement with the bank or depositary for the payment of such check, draft or order, when presented."

The issuance of this writ is a matter of right. The Constitution of the United States, article IV, sec. 2, provides that:

"A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall, on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime."

The Uniform Criminal Extradition Act of July 8, 1941, P. L. 288, sec. 6, 19 PS §191.6 provides:

"The Governor of this State may also surrender on demand of the executive authority of any other state any person in this State charged in such other state in the manner provided in section 3 with committing an act in this State or in a third state intentionally resulting in a crime in the state whose executive authority is making the demand, and the provisions of this act not otherwise inconsistent shall apply to such cases even though the accused was not in that state at the time of the commission of the crime and has not fled therefrom."

The jurisdiction of this court on a writ of habeas corpus is limited to: (a) Identification of the person remanded; (b) whether the record shows the crime was charged against him, and (c) whether he is a fugitive from justice by reason of the stipulation. Our inquiry is limited to the latter question only.

It is contended and argued by counsel for relator that relator is not a fugitive from justice because he claims that the alleged offense was committed by signing and mailing a check while in the State of Pennsylvania. The court finds that relator did go into the State of Ohio and there secure merchandise for which he became indebted to the Memorial Art Works and that relator had theretofore been going to the place of business of the Memorial Art Works, buying goods and paying for them by check, and that relator did deliver a check in payment of the goods. His check was not paid by reason of lack of sufficient funds in the bank on which it was drawn. Counsel for relator claims that to be a fugitive from justice, relator must have left Ohio, the State in which he committed the crime, for the purpose of escaping punishment for it. This is not the law in Pennsylvania.

"If having been within a state, he is accused of having committed, while there, that which by its laws constitutes a crime, and, when he is sought to be subjected

to criminal proceeding therefor, he has left its jurisdiction and is found within another state, he is a fugitive from justice": Commonwealth ex rel. Reynolds v. Fluck, 57 Montg. 317.

Relator claims that he did not intend to violate the law. Later, he made payments which, if applied to this check, would have paid it. This defense is immaterial. This court will not go into the merits or motives because the question of relator's guilt or innocence will be determined in the State of Ohio where the offense is alleged to have been committed. The necessary jurisdictional facts authorizing the extradition of relator are admitted or appear from the papers.

The Uniform Criminal Extradition Act of 1941 makes no requirement concerning residence. The case is distinguished from Commonwealth ex rel. Coloversic v. Abbott, 2 Wash. Co. 213, because here relator admits that he was in the State of Ohio immediately before the offense was alleged to have been committed, and that he actually received the merchandise in question, and that he delivered to the seller, by a letter mailed in Pennsylvania, a check in payment of the merchandise which he had removed from the State of Ohio. Legally, he should be delivered to the State of Ohio for a fair trial to determine whether he has committed the offense for which he stands indicted in that State.

While this Commonwealth should carefully guard and protect the rights and liberties of its citizens, it is equally important that the constituted authorities of this Commonwealth should comply with the requests of other States for the return of fugitives from justice. These rights are reciprocal. We would expect like compliance from a similar request made by our authorities.

### Order

And now, August 17, 1950, for the foregoing reasons, Michael G. Matola, relator, is hereby remanded

to the custody of James O. Roupe, warden of the Washington County Jail, and to Allen Jones, agent for the State of Ohio, to be by him transported to the State of Ohio, according to the warrant of the Governor of Ohio.

Costs of this proceeding are to be paid by Michael G. Matola.